SECURITY BANK OF ELVINS, a Corporation, Appellant, v. NATIONAL SURETY COMPANY, a Corporation, and WILLIAM BRYAN COZEAN. —62 S. W. (2d) 708.

Division One, August 3, 1933.

*Davis & Damron* and *Thomas T. Fauntleroy* for appellant.

*Fordyce, White, Mayne & Williams* and *Edgar & Banta* for respondents.

ATWOOD, J.—The Security Bank of Elvins sued its former cashier, William Bryan Cozean, and the National Surety Company, maker of his surety bond, and obtained verdict and judgment against both defendants for $7624.49. Defendant National Surety Company

filed motion for a new trial and from the circuit court's order sustaining this motion plaintiff has appealed. We quote as follows from appellant's statement of the facts which counsel for respondents say "is substantially correct and is satisfactory to the respondents herein":

"On July 29, 1921, plaintiff was engaged in the banking business at Elvins, Missouri, and the defendant William B. Cozean was its cashier. On the date last mentioned the defendant, National Surety Company, bonded Cozean as such cashier in the sum of ten thousand dollars ($10,000), and by renewal of annual premiums the bond remained effective until July 29, 1925.

"The insuring clause of the bond protected plaintiff against any loss occasioned by embezzlement and other specified acts of Cozean '*until* all his acts with the bank shall have been *fully settled* and *satisfied.*'

"Clause two required plaintiff to give immediate notice to the defendant at its head office in New York City of any defalcation or dishonesty on the part of Cozean and within sixty days after discovery of any loss to file with defendant an itemized statement thereof.

"Clause seven of the bond provided 'the surety's *liability* hereunder shall *terminate* immediately (a) *upon discovery* by the bank or any of its officers of any default hereunder on the part of the employee; (b) when employee leaves the service of the bank; (c) fifteen days after receipt by the bank of written notice from the surety of its desire to withdraw as surety for said employee; and the surety shall not be liable for any claim hereunder unless it be presented to the surety within six months after the *liability* of the surety hereunder *terminates.*' (All italics ours.)

"Plaintiff remained in the banking business till March 1st, 1929, and Cozean remained its cashier till that date when it was discovered that he had defaulted, and then his employment with the bank as cashier was immediately terminated. On the next day, March 2nd, plaintiff's president gave notice by telegram and by letter to defendant at its head office in the City of New York that Cozean had defaulted as cashier in the approximate sum of $23,000, and called defendant's attention to the bond covering Cozean.

"The plaintiff, receiving no reply to its telegram and letter of March 2nd, and in order to timely furnish an itemized statement of its loss, on or about March 19th following, secured an accountant at an expense of $125 to audit Cozean's accounts with plaintiff. The accountant completed his audit in a few days, whereupon, on March 28th following, plaintiff furnished defendant with a copy of an itemized statement of the loss. The original was sent to the prosecuting attorney of St. Francois County.

"Afterwards, on April 3rd, defendant acknowledged receipt of plaintiff's communication of March 28th 'with enclosures' and wrote

it was 'referring this matter to our Kansas City, Missouri, office who will give same their prompt attention.' On April 3, 1929, Mr. James H. Moore, the defendant's adjuster in Kansas City, wrote plaintiff as follows:

" 'In Re: Claim 167096—W. B. Cozean.
" 'Security Bank of Elvins.

" 'Your letter dated March 2nd, in regard to the above matter has been forwarded to the writer for attention.

" 'We note that the term of your bond under which you are filing claim, expired in 1925. You will note that your bond provided for *a term of six months after discovery* in which you may file claim under same. As the six months time provided in your bond has long since expired, I am sure you will appreciate that we will be unable to assist you in this matter.

" 'We are very sorry indeed, that this situation has arisen and trust that we will be able to assist you some time in the future.'

"The bank records indicated that while defendant's bond was in effect, viz: from July 29, 1921, to July 29, 1925, Cozean had embezzled on July 29, 1924, $4000; on April 14, 1925, $2,490.67; on June 27, 1925, $2,000. Plaintiff made up a formal itemized statement, claim and proof thereof for these sums, and furnished same to defendant April 20, 1929. Defendant held the document for some time and returned it to plaintiff.

"Defendant refused to pay and plaintiff sued for the three items mentioned above, and on the trial used Cozean as a witness to establish the claim. He testified he embezzled the first and last items in the exact sums mentioned above, but as to the second item he testified that he embezzled only $1,624.29 instead of $2,490.67, as charged; that he embezzled the sums during the bond period. No other witness testified as to his embezzlements and no witness denied them. The amount of the verdict coincided exactly with the amount embezzled as testified to by Cozean.

"After the term of this bond expired Cozean was covered by a bond in another company for $10,000, and also defaulted under it to the extent of over $15,000. This latter default occurred after July 29, 1925, and prior to March 1, 1929. This latter bond was paid to plaintiff, and Cozean made restitution to plaintiff of property of the value of $3,420, all of which was applied on his shortages that were made after July 29, 1925, and during the coverage of the latter bond. After applying the amount of the bond collected and amount of property restored, the Bank still had a loss on the shortage occurring after the bond in suit expired, and nothing to apply on the shortages made while the bond in suit was in force."

Counsel for appellant contend that the trial court erred in sustaining the motion for a new trial "because both the facts and the law preclude a recovery by defendant, and there was no error in the

trial;" while counsel for respondents insist that we should sustain the action of the trial court, that the giving of plaintiff's instruction was error, and that appellant could not recover in any event under the terms of the bond.

Since the trial court failed to specify any ground upon which it sustained the motion for a new trial, it will be assumed that the motion was sustained on each and every ground stated therein. [Gray v. City of Hannibal (Mo.), 29 S. W. (2d) 710, 713.] One of the grounds so stated was "because the verdict is against the evidence and against the weight of the evidence." Regardless of the seeming weight of the evidence opposed to the action of the trial court in setting aside a verdict of the jury on this ground, we do not interfere as long as there is any substantial evidence to bolster up the trial court's action, and such action will not be reviewed except upon a showing that no verdict in favor of the party to whom the trial was granted would be allowed to stand. [State ex rel. Ry. Co. v. Ellison et al., 268 Mo. 225, 231, 232, 186 S. W. 1075; Guthrie v. Gillespie, 319 Mo. 1137, 1146, 6 S. W. (2d) 886; Hunt v. Iron & Metal Co., 327 Mo. 887, 39 S. W. (2d) 369; Bowers v. Public Service Co., 328 Mo. 770, 778, 41 S. W. (2d) 810.]

Viewing the evidence disclosed by this record in the light of these decisions it does not appear that the action of the trial court in sustaining the motion for a new trial was arbitrary or unreasonable. As above indicated in appellant's statement of the facts, plaintiff used defendant Cozean as a witness to establish the claim. No other witness testified as to his embezzlements. He admitted that he was sentenced for embezzlement to two years each on nine counts to run consecutively and was paroled. The only offer of proof as to the amounts embezzled was his oral testimony fixing the amounts in three lump sums, two of which were in the exact amounts pleaded in plaintiff's petition and the other lump sum being between eight and nine hundred dollars less than the corresponding amount pleaded, although he admitted that he did not know the exact amount of this sum, and further testified that he did not know and had never known of any records that would show the exact amount of the bank's money he had embezzled on any one day. Nevertheless, he made hazy reference to bank records and checks evidencing these amounts but said they were not in his possession although he thought the bank president, Mr. Miller, had them. Mr. Miller testified as a witness for plaintiff but produced none of these checks or records and made no effort to account for them or to verify or corroborate Cozean's oral statements of his recollection as to the aggregate amounts he had embezzled. Counsel for defendant surety company moved to strike out Cozean's testimony as to the aggregate amounts he had embezzled on the ground that from his own admissions no aggregate amount of his defalcation could be determined. The court overruled

the motion, this defendant excepting. However, the court evidently questioned the probity and weight of such testimony, because immediately thereafter the following transpired:

"THE COURT: I do not know how you get at it. I don't know how you could figure that out.

"MR. FAUNTLEROY: He says he knows the aggregate amount.

"THE COURT (addressing the witness):

"Q. How did you arrive at that—you say you knew, according to counsel's suggestion, you know the amount of money you took from the bank, do you? A. Yes, sir, I do.

"Q. How did you arrive at that amount? A. No answer.

"MR. BANTA: I object to this and insist that he fix the amount according to some of the records of the bank. He has said there was no record and there is no other way to prove it.

"THE COURT: I am trying to find out. The objection will be sustained, no, your motion is overruled.

"MR. BANTA: I am objecting to anyone asking these questions as they are not competent, I don't think. May I now state to the court my reason for this position?

"THE COURT: I don't care anything about it.

"MR. BANTA: I except to the action of the court."

The fact that this testimony was not contradicted by the testimony of any other witness did not deprive the trial court of its well-recognized right to consider its weight and credibility when passing on a motion for a new trial properly raising that question. If the court deemed such testimony as to the aggregate amounts embezzled to be without probative value, and we cannot say upon the whole record that there was no substantial support for such a conclusion, then a verdict for this defendant might have been allowed to stand. Presuming, as we must, that the motion for a new trial was sustained on this ground, we do not think the trial court's order therein should be disturbed.

Respondent also insists that the motion for a new trial was properly sustained on its assignment that the instruction given at plaintiff's request was erroneous in that it failed to limit the jury to a consideration of the evidence of defalcations within the period covered by the bond. Appellant contends that the instruction was harmless although it may have been defective in this respect. It is unnecessary to rule this question as the defect, if any, will doubtless not reappear upon a new trial.

■ Neither should we rule respondent's final contention that "appellant could not recover in any event under the terms of the bond." An affirmative holding on this proposition would in effect be a direction to the trial court to enter final judgment for defendant surety company, although this defendant has already received at the hands of that court all that it asked, to-wit, an order for a new trial and

the appeal before us is from that order and not from a final judgment. In Scott v. Cowen, 274 Mo. 398, 410-14, 195 S. W. 732, we held that on proper showing a final judgment may be so ordered on such appeal in an equity case, but we are not aware of any decision holding that such may be done in an action at law. It appears from the record in this case that plaintiff tendered evidence of waiver by defendant surety company of the very provisions of the bond under which it now asserts non-liability. This is properly a question for the jury and plaintiff's right to submit same upon due proof at a new trial should not be foreclosed at this time.

For the reasons above stated the order sustaining the motion for a new trial is affirmed and the cause remanded. All concur.