MARIE GEORGIA LINDSEY, an Infant, by ODA B. LINDSEY, Her Next Friend, v. HARVEY VANCE and MARIE VANCE, Appellants.—88 S. W. (2d) 150.

Division One, November 12, 1935.

1112

*William R. Schneider* for appellants.

*Berthold & Chase* for respondent.

FERGUSON, C.—Action for damages for personal injuries sustained by plaintiff a minor, who brings the action by her father as next friend. Plaintiff was injured when struck by an automobile as she was walking across Twentieth Street in the city of St. Louis. The automobile was owned by the defendant Marie Vance, who was riding in same at the time, and was driven by her brother, defendant Harvey Vance, who was driving the automobile for and in her behalf. Upon a trial in the Circuit •Court of the City of St. Louis the verdict of the jury was for defendants. The trial court sustained plaintiff's motion for, and granted, a new trial specifying "of record," as grounds therefor, that "the verdict is against the weight of the evidence" and that the trial court erred in "giving defendants' Instruction No. 6." Defendants appealed from the order granting a new trial. The petition alleges and prays damages in the sum of $10,000, therefore our jurisdiction of the appeal.

1114

■ Appellants advance the proposition here that regardless of error, if any, in their instructions there is no evidence to sustain a verdict for plaintiff and that under the evidence a verdict for plaintiff could not stand. The trial court has broad discretionary power to grant one new trial on the ground that the verdict is against the weight of the evidence and if it appears herein that a submissible case was made we would not be warranted in disturbing the action of the trial court in granting a new trial on that ground. In that event the trial court may, but the appellate court may not, pass upon the weight of the evidence. ■ Appellants' contention therefore is directed to the sufficiency of the evidence to make a case for the jury and presents the same question that arises upon a demurrer to the evidence. We are then required to examine the record and determine therefrom whether there is any substantial evidence in plaintiff's favor. "If not there was nothing for the trial court to weigh and it had no right to say that the weight of the evidence is against the verdict;" contra if there is substantial evidence, making a case for the jury, the order granting a new trial must be affirmed. [Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43; Hunt v. Gillerman Iron & Metal Co., 327 Mo. 887, 39 S. W. (2d) 369; Guthrie v. Gillespie, 319 Mo. 1137, 6 S. W. (2d) 886; Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S. W. (2d) 810; Davis v. Johnson, 332 Mo. 417, 58 S. W. (2d) 746; Security Bank of Elvins v. National Surety Co., 333 Mo. 340, 62 S. W. (2d) 708; United Construction Co. v. City of St. Louis, 334 Mo. 1006, 69 S. W. (2d) 639.]

■ Before reviewing the evidence we look to the charges of negligence set out in plaintiff's petition. As primary negligence it is charged that defendants "violated Section 7775 of the Revised Statutes 1929" in that, they "failed to exercise the highest degree of care in operating the automobile," "failed to drive same in a careful and prudent manner and at a rate of speed so as not to endanger" plaintiff, but "drove same at a high, dangerous and excessive rate of speed" under the circumstances, and "failed to sound a signal warning of the approach of the automobile toward plaintiff." A violation of the humanitarian rule is then charged in that, defendants "saw, or by the exercise of the highest degree of care could have seen plaintiff crossing" the street "from the west to the east side and that plaintiff was in a position of imminent peril and danger of being struck and injured by the automobile . . . and that plaintiff was . . . oblivious of any danger or peril to herself, in time thereafter, by the exercise of the highest degree of care and with the means and appliances at hand on the automobile . . . to have sounded a signal warning of the approach of the automobile, . . . or to have stopped . . . diminished the speed . . . or . . . changed and diverted the course of same" and "could thereby have avoided striking and injuring plaintiff." The joint answer was a general denial and a plea of contributory negligence.

As plaintiff, a child, twelve years of age, was walking across Twentieth Street, in the city of St. Louis, from the west toward the east side thereof she was struck by, or as defendants put it came in contact with, an automobile driven by defendant Harvey Vance. The accident occurred about six P. M., January 26, 1932. Defendant Marie Vance owned the automobile, a two-seated, two door, Buick coach, and was at the time riding in the back seat, sitting on the right side; her friend and guest, Miss Evelyn Flori, sat at her left. Defendant Harvey Vance sat alone, in the driver's position, in the front seat. It is admitted that Harvey Vance was driving his sister's car for her and in her service, having, at her request, called for her, with the car, at her place of work and was driving her home: Plaintiff resided with her parents. Their home was on the west side of Twentieth Street, a north and south street, forty feet in width. Montgomery Street, an east and west street, opens into but stops at the east side of Twentieth Street. Plaintiff testified that she was walking across Twentieth Street at the usual and customary place used by pedestrians, which had Montgomery Street intersected or crossed Twentieth Street would have been the north side of the intersection, that is, that she was walking across Twentieth Street along the usual path of pedestrian travel on a line with the north side of Montgomery Street and the northeast corner of Montgomery and Twentieth streets where a store was located. She was going to this store to purchase bread having been sent, by her parents, on that errand. Plaintiff testified, that before she stepped from the sidewalk, on the west side of the street, into the street: "I looked both ways" but "saw no traffic coming" from either the north or south and that "there were no automobiles parked" or standing on either side of the street; that she then stepped into the street and proceeded toward the east side walking "at an ordinary gait;" that when she reached the "middle" or "center" of the street she again looked in both directions; that when, at that time, she looked "to the south" she "saw some lights . . . about the alley between Montgomery Street and the next street south" of Montgomery (the evidence was that the alley mentioned is 125 feet south of Montgomery Street); that "after" she "saw the lights" she "continued walking" toward the east curb, looking toward the east and not again looking south; that when she was yet "three or four steps" from the east curb she "was struck" by something, lost consciousness and did "not know anything after" she "was struck" until consciousness returned the following morning and she realized she was in a hospital. The distance plaintiff was from the east curb at the time she was "struck" was estimated by stepping or measuring across the floor of the courtroom. However the record does not show that measurement, but merely that it was made. The trial court of course had the benefit of that testimony. The automobile was traveling north. The de-

fendants and Miss Flori, their guest, testified that they did not see plaintiff prior to or at the time of the impact; that they heard a "thud" against the side of the automobile and the driver, defendant Harvey Vance, stated that he thereupon brought the automobile to a stop within a space of five or six feet; that they got out of the automobile and, for the first time, saw plaintiff who was lying in the street a few feet back of the left fender of the automobile and that she was unconscious; that they placed her in the automobile and took her to a hospital; and that she had not regained consciousness when she was received at the hospital. It is not necessary to detail the injuries. Plaintiff had medical testimony and other evidence as to the nature and extent of the injuries she alleges she sustained. The evidence on the part of both plaintiff and defendants was that there were no automobiles parked or standing along either side of the street at or near the place of accident nor any other automobile, or other vehicle, traveling along the street from either direction. The inference follows that the lights which plaintiff noticed at "about the alley," 125 feet south of Montgomery Street, when she reached the "middle" of the street and looked south, were the lights of defendants' automobile. Plaintiff's testimony indicates that she was yet a distance of ten or twelve feet from the east curb when the automobile struck her and as the street is forty feet in width it appears that while she walked eight or ten feet the automobile traveled 125 feet or more. As noted no other automobiles were traveling along that street during any of the time after plaintiff entered the street. As she crossed the street after passing the center and onto the east half it would seem to be a reasonable inference that she would then have been within view of the driver of the automobile, that is, that in the exercise of the highest degree of care he would have then seen her in the street, looking and walking toward the east curb. The evidence about street lights and weather conditions is conflicting. Plaintiff had evidence that there were three electric street lights at and near this junction of Twentieth and Montgomery streets; one on the west side of Twentieth Street opposite Montgomery Street, one on the south side of Montgomery Street and one above Twentieth Street directly over the east half of the street where plaintiff was walking at the time she was struck. Plaintiff's evidence further was that these street lamps were burning and that the electric lights in the store at the northeast corner of Twentieth and Montgomery streets were burning and that the light from the store also, to some extent, lighted the adjacent street. Defendants "did not observe whether there were any street lights there or not" but testified that if street lamps were located as plaintiff's evidence placed them that they were not lighted at that time. Evidence on the part of plaintiff was there was a light fall of rain, "was drizzling rain," but "was not snowing." The driver of the automobile testified, that it was

"very dark" at that street junction, "it was snowing at the time, big flakes," "a blanket of snow falling;" that "the only vision" he had "was through the front window" and "directly ahead," "couldn't see to the side because snow was falling so fast and the streets were so dark;" that the "headlights" of the automobile "would that night," and under the conditions he described as existing, "show an object 25 feet in advance" of the automobile and "cast rays fifteen feet to the sides;" that the headlights of the automobile were in good condition, were lighted and the "windshield wiper was working" but that visibility was limited to the "radius of the headlights." On cross-examination he stated there was nothing to obstruct the view of the street except the snow. Miss Vance stated: "We had a clear windshield and clear windows." Miss Vance and Miss Flori testified that "it was snowing" and "snowing and raining at the same time." Defendants' evidence shows the automobile was approximately six feet in width and variously estimated that the right side of the automobile was within six or eight feet of the east curb at the time of the impact. The speed of the automobile was estimated at "about ten miles an hour" and the defendant Harvey Vance stated that "considering conditions" existing at the time he could "have stopped" the automobile moving at a speed of ten miles an hour "within a distance of 10 or 15 feet." We have however his testimony that he did after the impact stop the automobile within a space of five or six feet. It was shown by defendants' evidence that the automobile lights, signal horn and brakes were in good condition and admitted, that no warning signal of any kind was sounded, that the brakes were not applied, nor the speed slackened prior to the impact, and that there was no variation in the course of the automobile.

Appellants say that the evidence convicts plaintiff of contributory negligence, as a matter of law, and bars recovery. We need not however discuss that contention or determine whether, under the present evidence, contributory negligence was a question for the jury as we are of the opinion a submissible case was made under the humanitarian rule which permits a plaintiff to recover notwithstanding his contributory negligence. The evidence most favorable to plaintiff considered, with the all reasonable and fair inferences therefrom allowed, and disregarding defendants' evidence contradictory thereof, we think the trial court properly submitted the case to the jury on the humanitarian theory that if the driver of the automobile saw, or by the exercise of the highest degree of care would have seen, that plaintiff, apparently unaware or oblivious of the near approach of the automobile, was in, or about to go into, a position of imminent peril of being struck by the automobile, in time thereafter, by the use of the means and appliances at hand, and with reasonable safety to the automobile and its occupants, to

have avoided striking plaintiff but failed to do so then defendants are chargeable with negligence.

We have recited the evidence as to the lights, both street lights and the headlights of the automobile, weather conditions, visibility, speed, distances, and other facts and circumstances bearing on the elements necessarily involved and, we think, it is apparent therefrom that an issue of fact was made as to whether the driver of the automobile could by the exercise of due care have seen plaintiff going into danger, and apparently oblivious thereof, in time thereafter to have avoided striking her or whether, as defendants claim, darkness and weather conditions prevented him doing so. Accepting the evidence most favorable to plaintiff, the street crossing was lighted; there was only a light rain, a "drizzle of rain," which was not sufficient to affect visibility; no other vehicle was in view, standing or moving, on either street nor anything present in the street to obstruct the view of the driver of the automobile or divert his attention; plaintiff had crossed the center line of the street and was walking on the east half of the street toward the east and looking in that direction when the automobile traveling north on the east side of the street was yet 125 feet, or more, south of the junction; the headlights of the automobile were in good condition and burning; the signal horn and brakes were in good condition; and the driver says he could have stopped the automobile within a space of ten or fifteen feet and did actually bring it to a stop within a space of five or six feet.

Thus it appears that there was substantial evidence to support a finding that the driver of the automobile could have sounded a warning signal, stopped the automobile, or swerved it in time to have avoided plaintiff after he saw, or by the exercise of the highest degree of care could have seen, her in, or about to enter into, a position of imminent peril of being struck by it. There was also, as we have pointed out substantial evidence on the part of defendants to the contrary. As observed, supra, if there is substantial evidence pro and con it is within the province of the trial court to pass on the weight of the evidence and grant one new trial on that ground. The applicable rule is well stated in Hunt v. Gillerman Iron & Metal Co., 327 Mo. 887, 39 S. W. (2d) 369, as follows: "The rule may be thus stated: Where a new trial is sought on the ground that the verdict is against the weight of the evidence, in determining that question, the trial court may pass upon the weight of the evidence, and its action in granting or refusing to grant a new trial will not be disturbed on appeal where the evidence pro and con is substantial and conflicting or where there is any substantial evidence to support the trial court's action. This is so because trial courts may and appellate courts may not pass upon the weight of evidence. . . ..
In view of the trial court's authority to pass on the weight of the

evidence and our lack of authority to do so, the only question open for consideration in this court is whether or not there was any substantial evidence to support the trial court's action in granting a new trial. If so, its action must be affirmed. If not, such action should be reversed.''

The other ground specified by the trial court for the granting of a new trial, error in ''giving of defendants' Instruction No. 6'' is not briefed by respondent and we are not advised in what respect the giving of the instruction is alleged to have been error. However our conclusion above stated requires that the order of the trial court granting a new trial be affirmed. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.