**J. L. LOSH, Respondent,**

**v.**

**William Max BENTON, Appellant.**

**No. 49945.**

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1964.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 12, 1964.

———◆———

Harold L. Henry, West Plains, for plaintiff-respondent.

Richard D. Moore, Green & Green, H. D. Green, West Plains, for appellant.

BARRETT, Commissioner.

Virgie Losh died after being struck by the defendant Benton's automobile. Her husband J. L. Losh instituted this action against Benton to recover $25,000 damages for her death. Ten members of a jury re-

turned a verdict in favor of the defendant and the trial court sustained the plaintiff husband's motion for a new trial on the ground that "the verdict of the jury is against the weight of the evidence." The defendant Benton has appealed from this discretionary ruling and thus necessarily the only question briefed and argued and of course the only one involved is whether the plaintiff made a submissible case of the four disjunctively submitted assignments of negligence under the humanitarian doctrine—failure to stop, or slacken speed, or swerve, or to have given a timely warning. Sup.Ct.Rule 78.01, V.A.M.R.; V.A.M.S. § 510.330; Lindsey v. Vance, 337 Mo. 1111, 88 S.W.2d 150; Johnson v. St. Louis Public Service Co., Mo., 237 S.W.2d 136.

Mrs. Losh was struck and killed about 8 o'clock on the evening of July 6, 1961, as she was attempting to cross Harris Street (also known as H Highway) in Willow Springs. Harris is a north-south street and in the immediate vicinity is a viaduct with a southward grade extending approximately 582 feet over the railroad tracks. At the south approach to the viaduct Harris Street is intersected by Valley Street Road, an east-west street with paved traffic lanes about 25 feet wide. Off the southwest quadrant of the intersecting streets Mr. McGlynn has his grocery store. Mr. McGlynn gave these measurements and distances: Harris Street "to where the pavement ends" is 24 feet and beyond the pavement "where the blacktop is" is 22 feet wide. Across the pavement on the east side of the highway, there is a 15 foot shoulder. He said that the distance from the edge of the blacktop of Harris Street to his store is 40 feet and from the store to the edge of Valley Street Road the distance is 42 feet. There are four outside lights "at the edge of the porch" and an overhead street light on the east side of Harris Street.

After Mrs. Losh was struck by the defendant's automobile there was some debris on the highway and skid marks. All were agreed that the skid marks were "straight," there was some conflict in the evidence as to their length and location. Mr. Losh said there were some bloodstains on the pavement south of the debris. He said that the skid marks began "at about or near Valley Street Road," that the length of the skid marks to the debris was 36 feet, from the debris to the bloodstains 39 feet, from the debris north to Valley Street Road was 63 feet. Mr. McGlynn said that the distance from the skid marks to the spot of blood was 70 feet.

Mrs. Losh had been in McGlynn's store and was on her way to Mrs. Parker's to stay for the night, a half block east of Harris Street on Valley Street Road. Lorene Collins was sitting in the driver's seat of her family's automobile parked in front of the store. She saw Mrs. Losh leave the grocery store and walk alongside the parked automobile to the highway where she stopped, looked in both directions and proceeded "four or five feet" onto the highway when she was struck by the defendant's automobile. "Well, she just walked by and walked out on the highway and stopped and looked, and started on across. * * * No (she was not running) she just walked out there like anyone would and then when she saw the car, I guess she jumped back or tried to run back off of the highway. * * She didn't freeze. She tried to get out of his way."

Mr. Benton, taking his son home from a scout meeting, was driving a 1957 Chevrolet—in excellent mechanical condition. He said that he was following another automobile across the viaduct and that that vehicle turned right on Valley Street Road. Other witnesses saw the lights of an automobile on Harris Street before the defendant came into view but the implication from their testimony was that no other vehicle interfered with his view south on the street. He says that as soon as he saw Mrs.

Losh he immediately applied his brakes but was unable to avoid hitting her. It was his position that there was not sufficient time for him to also signal or swerve. However, Mr. Benton testified that he approached and crossed the viaduct at an undiminished speed of 20 to 25 miles an hour. He says that he was traveling 40 to 50 feet behind the car that turned off onto Valley Street Road and that "I was about forty to fifty feet away from her when I first seen her step into my headlights onto the highway. * * * She just came out so far and stopped and looked toward me and it seemed that she just froze." He said that Mrs. Losh was about 5 feet from the west edge of the pavement when she stopped on the highway. In a deposition he had said that "(i)t couldn't be more than 60 or 70 feet from where she was to the street" to the point on Valley Street Road where the other vehicle turned off to the right.

■ It is not necessary here to orderly collect all the speeds and distances and precisely demonstrate all the possibilities (that has been carefully done in several other cases), the only concern now is whether under this record the plaintiff made a case on the submitted theory. While courts may not judicially know the precise distance in which a given automobile traveling at a particular speed on a particular road can be stopped (Spoeneman v. Uhri, 332 Mo. 821, 829, 60 S.W.2d 9, 12,) it is now common knowledge that properly equipped automobiles traveling at a speed of 20 miles an hour, including reaction time, can be stopped in less than 50 feet. Leavell v. Thompson, 238 Mo.App. 130, 176 S.W.2d 854; Annotation 84 A.L.R.2d 979 "Judicial notice of drivers' reaction time and of stopping distance of motor vehicles traveling at various speeds." Viewing the testimony favorably to plaintiff, Mr. Benton said that he was 50 feet away when Mrs. Losh stepped into his headlights and if that is not sufficient, traveling at a speed of 20 miles an hour, it could be demonstrated upon this record that he saw or should have seen her when she was much further away and in the path of his automobile. It is this basic supportable inference that distinguishes this case from Vietmeier v. Voss, Mo., 246 S.W.2d 785, and Kirks v. Waller, Mo., 341 S.W.2d 860, relied on by the appellant. By his own testimony, whatever excuse he may have had, Mr. Benton did not signal, or slacken speed, or attempt to swerve in any direction. It follows almost without saying that if in the circumstances of this record Mr. Benton could have stopped his automobile he certainly could have swerved or slackened speed and thereby avoided striking Mrs. Losh. Hendershot v. Minich, Mo., 297 S.W.2d 403. And, "(o)f course, a warning could have been given in an even shorter time and distance." Hildreth v. Key, Mo.App., 341 S.W.2d 601, 607; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628; Schmitt v. Shuplak, Mo.App., 42 S.W.2d 959. As indicated, it is not necessary here to make all the calculations and demonstrate, as to the four submissions under the humanitarian doctrine, and particularly as to the basic fact of ability to stop, the circumstances of this case fall within and are governed by Lindsey v. Vance, supra; Gerran v. Minor, Mo.App., 192 S.W.2d 57; Ayres v. Key, 359 Mo. 341, 221 S.W.2d 719; Daniels v. Smith, Mo., 323 S.W.2d 705. Therefore the order granting plaintiff a new trial is affirmed and the cause remanded.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.