**William ROBINSON, Plaintiff-Respondent,**

**v.**

**Elsie WAMPLER, Defendant-Appellant,**

**and**

**Edsel French, Defendant.**

**No. 50707.**

Supreme Court of Missouri,

Division No. 2.

May 10, 1965.

George R. Gerhard, St. Louis, William L. Mason, Jr., Galena, for respondent.

Walter F. Timm, James E. McDaniel, Barnard, Timm & McDaniel, St. Louis, for Elsie Wampler, defendant-appellant.

BARRETT, Commissioner.

On August 10, 1962, the plaintiff-respondent, William Robinson, was involved in a collision of motor vehicles on U. S. Highway 67 near Bonne Terre. To recover $68,-050.00 for his personal injuries and losses and $42,650.00 for his wife's injuries and his consequential losses the respondent Robinson instituted this action in two counts against Edsel French and the appellant Elsie Wampler. French in effect defaulted and the jury returned a verdict against him and in favor of Robinson for $50,000.00 on the first count and $30,000.00 on the second count and this appeal is not concerned with that verdict and judgment. The jury, however, returned a verdict in favor of Elsie Wampler and as to her Robinson filed a motion for a new trial alleging among other grounds that the verdict in her favor was against the weight of the evidence. The trial court sustained the motion for new trial upon the specific ground that the "verdict is against the weight of the evidence" and Mrs. Wampler has appealed and this necessarily is the only phase of the cause with which this court is now concerned.

The essence of the appeal is the contention that the court erred in granting a new trial on the ground that the verdict was against the weight of the evidence "because plaintiff failed to make a submissible case against defendant Wampler." However, the appellant has complicated consideration of the essential merits of the appeal by two supplemental contentions: (1) that "because plaintiff failed to file a motion for directed verdict at the close of plaintiff's case or at the close of all the evidence" he voluntarily submitted the issue of fact to the jury and was therefore in no position to request a new trial on the weight of the evidence, and (2), she argues, assuming that there was substantial evidence to support the submission "nevertheless the trial Court abused its discretion in granting plaintiff a new trial because the overwhelming weight of the evidence was in favor of defendant Wampler and against plaintiff."

The latter argument will be disposed of finally in considering the essential merits of the appeal but in passing it must be noted that in several of the cases relied on "the trial court in sustaining the motion for a new trial did not act upon discretionary grounds." Wallace v. Whitzel, Mo., 324

S.W.2d 157, 159; Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 223 S.W.2d 383.

The first point, founded solely on plaintiff's failure to move for directed verdicts (RSMo 1959, §§ 510.280, 510.290, V.A. M.S.), while indeed novel and at first glance caused some concern has only served to detract from the principal issue and it is not necessary to consider the contention at length. In the first place the appellant herself moved for directed verdicts and so the trial court was in fact apprised of the problem of whether plaintiff made a submissible case. Rothweiler v. St. Louis Public Service Co., Mo.App., 224 S.W.2d 569, 572. But more directly to the point is the fact that it is only after an adverse verdict that the plaintiff in the ordinary negligence action would have either the opportunity or the necessity of complaining that the verdict was against the weight of the evidence, an objection that does not necessarily involve or include whether plaintiff might be entitled to a directed verdict. Generally, therefore, a motion for new trial is the proper method or remedy for raising the objection that the verdict was against the weight of the evidence. 66 C.J.S. New Trial § 69, p. 203.

In this connection, while exceptions in the conventional sense have been abolished (Civil Rule 79.01, V.A.M.R.), the essence of the matter was summed up in Lee v. Baltimore Hotel Co., 345 Mo. 458, 462, 136 S.W.2d 695, 697, in which the court on its own motion granted a new trial: "There can be no question about the inherent power of the trial court to set aside a verdict and grant a new trial, at any time during the term in which it is returned, in the reasonable exercise of its discretion, irrespective of grounds stated in a motion for new trial. * * * Exceptions, while essential to preservation for appellate review of matters outside the record proper, are immaterial in considering the propriety of the trial court's action *in granting* a new trial, because 'the trial court may grant a new trial on account of any erroneous ruling made by it, whether excepted to or not.' " Seldom, almost never it may be said, would a plaintiff in a conventional common-law negligence action be entitled to a directed verdict. Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558. In any event the trial court has the broad discretionary power to grant one new trial on the ground that the verdict is against the weight of the evidence (Civil Rule 78.01; V.A.M.S. § 510.330), and having done so an appealing defendant's claim that no case was made "is directed to the sufficiency of the evidence to make a case for the jury and presents the same question that arises upon a demurrer to the evidence." Lindsey v. Vance, 337 Mo. 1111, 1114, 88 S.W.2d 150, 151. Of course, and from this principle the appellant may have been led to the present collateral contention, while the fact of a verdict's being against the weight of the evidence is ground for a new trial, the defendant's right to a directed verdict of necessity negatives the plaintiff's right to a new trial. 66 C.J.S. New Trial § 70, p. 226. "In other words, plaintiff has no right to a new trial when the evidence in her favor is not sufficient to take the case to the jury. It is much the same question as is presented on a demurrer to the evidence, and, if such a demurrer should have been granted, no new trial can be granted on this or any other ground. A failure of evidence to support a verdict for plaintiff renders a case dead, and it cannot be resurrected by a motion for new trial." Payne v. Reed, 332 Mo. 343, 347, 59 S.W.2d 43, 44.

And now in approaching the essential merits of the appeal, whether plaintiff made a submissible case, and at the risk of tiresome repetition, it appears to be necessary to again note, at least from a few of the more recent cases, the general rules applicable once the trial court has granted a plaintiff a new trial on the specific ground that the verdict in favor of the defendant is against the weight of the evidence. "The trial court is vested with an inherent and broad discretion in granting one new trial upon the ground the verdict and judgment

are against the weight of the evidence. * * * And its ruling upon that ground will not be disturbed, except in case of manifest abuse. * * * The rule is sometimes expressed by saying 'that the granting of a new trial by the trial court will not be interfered with on appeal where there is substantial evidence to sustain the trial court's view, or, putting it another way, when there is substantial evidence to support a verdict for the party to whom a new trial is granted.' " Dawson v. Scherff, Mo., 281 S.W.2d 825, 831 (a case in which a defendant was granted a new trial on the ground that the verdict in favor of the plaintiff was against the weight of the evidence.) On the other hand, when a plaintiff was granted a new trial the court affirming the order said, "In determining whether the trial court properly exercised its discretion in awarding a new trial on the ground that the verdict was against the weight of the evidence, a discretionary ground, we must examine the record to ascertain if there was sufficient substantial evidence to justify the submission of plaintiff's case to a jury. If plaintiff failed to make out a submissible case, the order granting a new trial to plaintiff, after verdict for defendant, would be arbitrary and an abuse of the court's discretion." Schmidt v. Allen, Mo., 303 S.W.2d 652, 655. Within the framework of these general rules there are two lines of cases, depending on the particular facts, those in which it was demonstrable upon the record that there were no circumstances from which the inference of negligence was permissible and hence there was an abuse of discretion in the court's granting new trials and, second, those in which by the same standards the inference of negligence was permissible from the circumstances and therefore the orders granting new trials were sustained. Berry v. Harmon, Mo., 323 S.W.2d 691, 693.

In contending here that the respondent Robinson did not make a case and that therefore the trial court erred in granting a new trial on the weight of the evidence the appellant Wampler "contends she can demonstrate to this Court that plaintiff's testimony against defendant Wampler is not of the 'substantial' quality required to justify the submission of the case." She points to contradictions in the testimony of the respondent's independent eyewitness Bailey and argues that by reason of the "inconsistencies" his testimony is "incredible." She then applies the same tests to the respondent Robinson's testimony and to certain of the exhibits, photographs and parts of the three automobiles involved, and argues that they "become(s) one of the physical possibilities or impossibilities" and that they fail to show "any impact damage" between respondent's Pontiac and appellant's Chrysler and finally she "suggests plaintiff's evidence is contrary to the physical facts." She then sets forth what she denominates four "physical factors" which she says demonstrate that "there was no sufficient substantial evidence to warrant the submission of any one of said three instructions" hypothesizing the plaintiff's multiple theory of the appellant's liability.

The appellant's contention has been set forth in this manner, before detailing the facts and determining whether respondent made a submissible case, because brief reference to some of the cases relied on point up the weakness if not the factitiousness of her argument. For example, in Freed v. Mason, Mo.App., 137 S.W.2d 673, it is pointed out that in considering whether there was a submissible case the appellate court need not be concerned with all the theories submitted "in passing upon a demurrer to the evidence we must determine whether a case was made for the jury *upon any theory of negligence charged in the petition.*" And in determining whether there has been a manifest abuse of discretion in granting a new trial on the weight of the evidence "we will examine the record to ascertain if there was sufficient substantial evidence to justify the submission of plaintiff's case to the jury; or to sustain a verdict for plaintiff, the party to whom the new trial was granted." Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 169, 227 S.W.2d 660, 661. In

this connection and particularly as to "physical facts" and automobile collisions the court quoted approvingly from a text—"So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." Lowry v. Mohn, Mo., 195 S.W.2d 652, 657.

In brief, the circumstances were that about 12:30 on Friday, August 10, 1962, a line of traffic consisting of two tractor-trailer units and three following automobiles was proceeding north on Highway 67. At this particular point in the highway there was a rather long hill, the appellant calls it "a gradual grade up for north-bound traffic," and a sharp curve to the left. There were yellow "no passing" lines for both north and south traffic. Near and approaching this point on the highway was the respondent Robinson traveling south and of course downhill in a 1957 Pontiac. And following Robinson, traveling in the same direction, was the appellant Mrs. Wampler and her friend Mrs. Eaves in the appellant's 1960 Chrysler. The last vehicle in the line of traffic proceeding north was a 1957 Plymouth driven by Edsel French and just ahead of him on the highway was William Bailey, age 65, of Hartford, Illinois, a retired Sinclair Refining Company employee, traveling at a speed of 50 to 55 miles an hour. With a highway and traffic in this situation French pulled out of the line of traffic as it proceeded north and, disregarding the yellow lines, attempted to pass or go around the preceding vehicles. And, of course, the Plymouth collided with the respondent's Pontiac after it came around the curve. As the Pontiac and Plymouth collided almost head on Mrs. Wampler's Chrysler, according to Robinson and Bailey, struck the rear of the Robinson Pontiac and both vehicles rolled off into the ditch on the right side of the highway. Mrs. Wampler, to quote her counsel, "claims she did not at any time come into contact with plaintiff,

Robinson's, Pontiac" and this is the crux of the controversy and of this appeal. Despite her indicated argument, the appellant in her statement of facts frankly admits that "There is a dispute in the testimony as to whether or not there was a collision between defendant Wampler's Chrysler and plaintiff, Robinson's, Pontiac."

This candid admission may be sufficient to dispose of the appellant's argument and of the appeal. Mrs. Eaves says that as Mrs. Wampler drove south on the highway she was looking at Mrs. Wampler, age 60, and they "were talking about religion, and she was quoting Scripture to me." The consequence was that Mrs. Eaves neither saw nor remembers anything about a collision on the highway. Mrs. Wampler says that "we had been quoting some Scripture" but she says she was looking "straight ahead" as she drove south at a speed of 45 to 55 miles an hour, that before the crest of the hill no Pontiac was in sight and just as she came over the hill she suddenly came upon a Plymouth, "partially across my lane" that she "(p)ut on my brakes with everything I had" but collided with the Plymouth after which she says she guided her Chrysler off into the ditch. As she drove off the highway she says that she saw the Pontiac already in the ditch and she testified positively that her automobile "never" collided with the Pontiac.

But if the admission of a conflict in the evidence is not sufficient to dispose of the appeal, Mr. Bailey, who described the automobiles as No. 1 (French's Plymouth), No. 2 (Robinson's Pontiac) and No. 3 (Mrs. Wampler's Chrysler), said that the three automobiles all came into collision. Specifically he said, "No. 2 was the car that hit the northbound car that had passed me. And No. 3 was coming over the hill behind that one and collided with No. 2. * * * Just what part, I don't know. I was off a distance from it. But there was nothing to bother my view, and I could see it. * * * I saw the Chrysler hit the second car." On cross-examination he described the circumstances in precise detail and after relating

how the Plymouth pulled out of line and collided with the Pontiac "head on," and after seeing the Chrysler "(j)ust appearing over the crest," he gave "a rough estimate" of 700 feet away ("It would have to be a guess. I couldn't give you the exact feet on it"), he said, "It run into it; but just what part it hit, I don't know." And then there were these direct questions and answers:

"Q. * * * Did you actually see these two cars come together? A. Yes.

"Q. All right. What parts did you see of the Chrysler and the Pontiac come into contact with each other?

"A. The front part of the Chrysler hit the back end of the —

"Q. Hit the rear of the Pontiac?

"A. Of the Pontiac.

* * * * * *

"A. Well, I never clocked it, but the first two cars was setting perfectly still when the third car come in contact with the second car."

Insofar as his testimony concerned Mrs. Wampler's automobile, Mr. Robinson said, "Well, a car dropped around down the hill on me." He said that as he proceeded south on the highway at a speed of 60 to 65 miles an hour he became aware of the Chrysler behind him and "(t)hrough the rear-view mirror" he estimated it was "Oh, a car length" to the rear of his Pontiac. He said, "Well, she stayed right in behind me; didn't take the break" and was never more than "two car lengths" back. And then there were these specific questions and answers:

"Q. When you pulled on the wheel to go off or try to get away from the Plymouth, do you know where the Chrysler was at that time?

"A. Right behind me.

* * * * * *

"A. May be a car and a half, but not over that.

* * * * * *

"Q. Was there any collision after your car and the Plymouth? A. Yes, sir.

"Q. What was it? A. That's when the Chrysler hit me.

"Q. Where did the Chrysler hit you?

"A. Well, hit me right on the left-hand rear, right ahead of the front wheel—I mean, the front of my rear wheel."

It is not necessary to quote further from the testimony of these two witnesses, neither is it necessary to indicate the permissible inferences and note the possible supported grounds of negligence, it is sufficient to say that the evidence supports one or more of the submitted and hypothesized assignments of negligence and of course made a submissible case against Mrs. Wampler. Sundermeyer v. Lentz, Mo., 386 S.W.2d 16, 20; Gooch v. Avsco, Incorporated, Mo., 337 S.W.2d 245. And in this situation, as the court said in Dawson v. Scherff, supra, "Plaintiff's testimony was at times conflicting as to the speed of each and both vehicles and their relative positions upon the highway at particular points. But we are not referred to any conflict or misstatement which is so at war with any essential element of plaintiff's case as to amount to a judicial admission such as will 'put him out of court' * * *." See also Harding v. Peterson, Mo.App., 227 S.W.2d 88, 92, and Freed v. Mason, supra. The circumstances are in no way comparable to the automobile-train crossing case of Kelly v. Terminal Railroad Ass'n. of St. Louis, Mo., 315 S.W.2d 699, or to Stonefield v. Flynn, Mo.App., 347 S.W.2d 472, where the circumstances were "so manifestly incredible, impossible and contrary to the known laws of physics it does not amount to substantial evidence" to support the hypothesis of stopping distance under the humanitarian doctrine. Certain it is that the circumstances and the quoted testimony supports one or more of the submitted theories of negli-

gence and the defendant Wampler was not entitled to a directed verdict (Nelson v. Wabash Railroad Company, Mo., 300 S.W. 2d 407, 409), and, as indicated, under the applicable general rules there was no demonstrable or manifest abuse of discretion in the court's granting the plaintiff a new trial on the specific ground that the verdict in the appellant's favor was against the weight of the evidence. Schmidt v. Allen, supra; Berry v. Harmon, supra; Dawson v. Scherff, supra; Lindsey v. Vance, supra. Accordingly the judgment is affirmed and the cause remanded.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.