IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 1, 2018 Session

## STATE OF TENNESSEE v. GAINES RICHARDSON

**Appeal from the Criminal Court for Shelby County**
No. 14-04610        Paula L. Skahan, Judge

_____

### No. W2017-01102-CCA-R3-CD

_____

Defendant, Gaines Richardson, was indicted for two counts of aggravated robbery. After a jury trial, Defendant was convicted as charged. He received a total effective sentence of nine years. On appeal, Defendant argues that the evidence was insufficient to support his convictions and that several plain errors were committed by the trial court. After a thorough review, we conclude that the evidence is sufficient and that Defendant is not entitled to plain error relief. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Melody M. Dougherty (on appeal) and Mark Renken (at trial), Memphis, Tennessee, for the appellant, Gaines Richardson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Sam Winnig, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Factual and Procedural Background*

In September of 2014, a Shelby County Grand Jury indicted Defendant and co-defendant, Javon Ponder, for two counts of aggravated robbery. Trial began in August of 2016. The following is a narrative of the proof presented by the State at trial.

Winton Burrell is a licensed car dealer and operates his business out of his home. Mr. Burrell is on disability for a heart condition, but every tax season, Mr. Burrell sells some cars and, as a result, has large amounts of cash in his house. Mr. Burrell received a call from co-defendant, about purchasing a vehicle. During their discussion about the vehicle purchase, co-defendant agreed to get some money together and meet Mr. Burrell the next morning, April 1, 2014. Before noon on April 1st, co-defendant called Mr. Burrell and stated that he and "his cousin" were going to pick up the truck, a Ford F-150. When the men arrived, Mr. Burrell met them outside, showed them the truck, and walked inside to get the title at their request. Mr. Burrell recounted that once he had the title, "the next thing [he knew, he] had a gun pointed in [his] face by [Defendant]." Defendant continued to hold Mr. Burrell at gunpoint as he pushed Mr. Burrell through the house and into Mr. Burrell's bedroom.

Inside his bedroom, Tarreka Anderson, Mr. Burrell's fiancée, awoke to the sound of the commotion. She remembered awaking to the sight of a man, later identified as Defendant, pointing a gun at Mr. Burrell's face and asking where he could find the money. Ms. Anderson initially thought it was a joke and talked "crazy" to both of them because it was April Fool's Day. When Defendant pointed a gun at her and told her to "shut the 'F' up," she realized it was not a joke. Once Defendant pushed Mr. Burrell in the bedroom, Defendant took $6500 in cash that Mr. Burrell claimed he had set out on the ironing board in preparation for an automobile auction later in the day. Ms. Anderson said that Defendant found the cash in some shoeboxes. At any rate, Defendant ordered Mr. Burrell to lie down, and Mr. Burrell laid down in a manner which he thought would protect Ms. Anderson, who was pregnant with Mr. Burrell's child at the time. Once Mr. Burrell was lying down, Defendant asked where the rest of the money was located and rummaged through the shoeboxes in Mr. Burrell's bedroom. Defendant said, "you better not get your ass up" and exited the room.

After Defendant and co-defendant left, Mr. Burrell surveyed the house and noticed other things were missing. Mr. Burrell recalled that money, a PlayStation 4, games, a DVD, shoes, bags of medicine, keys to the car, keys to the house, cellphones, and a car radio were taken from the house. According to Ms. Anderson, they took "two or three pair[s] of Air Jordan tennis shoes," "a Play Station 4," and "a lot of DVDs," which belonged solely to her.

Mr. Burrell could not call the police immediately because his phone had been taken. Ms. Anderson and Mr. Burrell looked up Defendant and co-defendant on Facebook because they wanted to know their full names before they called the police. Once he had access to a phone, Mr. Burrell called the police and reported the robbery. The recording begins by giving the date and time as "Tuesday, April 01, 2014 at 3:58:55 p.m." In the recording, Mr. Burrell states that he had been robbed at gun point and gives

the full names of Defendant and co-defendant over the phone to the 911 operator. However, Mr. Burrell testified that he met Defendant for the first time on April 1st.

Mr. Burrell recounted that a police officer came to his house. Mr. Burrell used Facebook to look up pictures and show the police pictures of co-defendant. The police officer gave Mr. Burrell and Ms. Anderson instructions to come to the police station for a photographic lineup at a later date. In the time between the crime and the photographic lineup, Ms. Anderson gave birth. She remained in the hospital for two days, and the child remained in the hospital for two weeks.

Lieutenant Shawn Hicks of the Memphis Police Department investigated the instant case. Once the case was handed off to him, he contacted Mr. Burrell and Ms. Anderson by phone to talk to them about the case. Even though Lieutenant Hicks had names for the two suspects, he created a photographic lineup to confirm the identification. When making the photographic lineup, Lieutenant Hicks retrieved a picture of Defendant and co-defendant and placed them in separate lineups with photographs of other individuals that looked similar. Before administering the photographic lineup, Lieutenant Hicks had both Mr. Burrell and Ms. Anderson review the "Advice to Witness Viewing a Photographic Display" document. He explained to them the contents of the document and its instructions. After each victim signed the document, Lieutenant Hicks separated Mr. Burrell and Ms. Anderson and had them independently review the photographic lineups. Both victims identified Defendant and co-defendant. Subsequent to this identification, Lieutenant Hicks obtained an arrest warrant for Defendant and co-defendant. Mr. Burrell and Ms. Anderson identified Defendant and co-defendant in the courtroom. However, Ms. Anderson was unable to describe the clothing co-defendant was wearing because she did not have on her glasses.

At the conclusion of the trial, the jury found Defendant guilty of aggravated robbery in both Count One and Count Two. At a sentencing hearing, the trial court sentenced Defendant to concurrent nine-year sentences on each count.

In his motion for new trial, Defendant alleged that the evidence was insufficient to support his convictions and that the following the plain errors occurred at trial: the State engaged in improper argument during opening statement, the State elicited victim impact testimony from both Mr. Burrell and Ms. Anderson during its case-in-chief, the trial court published the 911 recording to the jury, the trial court admitted an impermissibly suggestive photographic lineup, and the State engaged in improper argument during closing arguments. The trial court denied Defendant's motion for new trial, and Defendant raises the same issues in this timely appeal.

*Analysis*

- 3 -

## I. Sufficiency of the Evidence

Defendant argues that the evidence presented at trial was insufficient to support his convictions for two counts of aggravated robbery because the evidence came from "two individuals who could not get basic facts straight even within their own individual testimonies at trial." The State argues that all of Defendant's arguments about the sufficiency of the evidence relate to the weight and credibility of the witness testimony, which is strictly determined by jury. We agree with the State.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

As charged in this case, aggravated robbery is a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a).

Defendant points out that Ms. Anderson changed her story. Initially, she claimed that she did not move until the men left. Then, she claimed that she was looking out the

- 4 -

window when the men left. Defendant continues by highlighting that Mr. Burrell testified that the stolen money was taken off of the ironing board while Ms. Anderson testified that it was taken out of shoeboxes. Defendant also directs us to the fact that Mr. Burrell testified to multiple places from which he retrieved the title to the truck. Defendant calls our attention to the fact that both Ms. Anderson and Mr. Burrell claim that they were the one to call the police. Finally, Defendant claims that the identifications of Defendant by both Ms. Anderson and Mr. Burrell were compromised because neither witness "knew the second man who came to their residence on the day in question, nor did they know his name." All of these discrepancies to which Defendant calls our attention are matters relating to the weight attributed to witness testimony and the credibility of each witness. "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997) (citing *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). Determinations of weight and credibility are made solely by the jury, and this Court may not second-guess those determinations on appeal. *Pruett*, 788 S.W.2d at 561. Therefore, we will not reevaluate the weight and credibility of the witnesses' testimony.

In a light most favorable to the State, the facts adduced at trial show that Defendant held Mr. Burrell and Ms. Anderson at gun point and intentionally took property from each of them without either person's consent. Thus, Defendant violently used a deadly weapon to intentionally or knowingly exercise control over the property of another without the owner's consent, and he did so with respect to two different individuals. The evidence is sufficient to support Defendant's convictions for aggravated robbery.

*II. Plain Error Review*

Defendant concedes that no contemporaneous objections were made regarding the following issues, but he presents them for plain error review. Our supreme court has succinctly described the discretionary nature of the plain error doctrine as follows:

> In criminal cases, the doctrine of plain error permits appellate courts to consider issues that were not raised in the trial court. [Tennessee Rule of Appellate Procedure] 36(b), the codification of the plain error doctrine, states in part that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." We have cautioned, however, that the discretionary authority to invoke the plain error doctrine should be "sparingly exercised," *State v. Bledsoe*, 226 S.W.3d [349,] 354 [(Tenn. 2007)], because "appellate courts do not sit as self-directed boards of legal

inquiry and research, but essentially as arbitrators of legal questions presented and argued by the parties before them." *State v. Northern*, 262 S.W.3d [741,] 766 [(Tenn. 2008)] (Holder, J., concurring and dissenting) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)).

*State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014). To determine whether a trial error rises to the level of justifying "plain error" review, we look to the following five factors:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Bishop*, 431 S.W.3d at 44. Even if all five factors are present, "the plain error must be of such a great magnitude that it probably changed the outcome of the trial." *Id.* (quoting *Adkisson*, 899 S.W.2d at 642).

### A. Opening Statement

Defendant contends that "the State engaged in argument and encouraged prejudice, sympathy and bias" when it made certain remarks during its opening statement. While counsel for co-defendant objected to the statements, no curative action was taken. According to Defendant, this was error. The State maintains that the statements by the prosecutor were not erroneous and, if they were error, the trial court adequately addressed the situation by asking the prosecutor to move on. Because Defendant failed to establish all of the requisite factors, we conclude he is not entitled to plain error relief.

In a criminal trial, the prosecution and the defense are entitled to make opening statements prior to the presentation of the case that set forth "their respective contentions, views of the facts, and theories of the lawsuit." T.C.A. § 20-9-301; *State v. Sexton*, 368 S.W.3d 371, 414-15 (Tenn. 2012). The purpose of an opening statement is to give a general overview of "the nature of the case" and "the facts each party intends to prove." *Sexton*, 368 S.W.3d at 415. One boundary on an opening statement is that the facts presented must be "deemed likely to be supported by admissible evidence," *id.* (citing *Stanfield v. Neblett*, 339 S.W.3d 22, 41-42 (Tenn. Ct. App. 2010)), and "[n]o reference

should be made to facts or circumstances which are not admissible in evidence." *Id.* (citing 75A Am. Jur. 2d *Trial* §§ 525, 526 (West 2012)).

In their role as advocates for the State, prosecutors must not cross the boundary lines demarcating prosecutorial misconduct. *See State v. Johnson*, 401 S.W.3d 1, 20 (Tenn. 2013). Prosecutors should not:

> (1) Intentionally misstate the evidence or mislead the jury as to the inferences they may draw.
>
> (2) Express his or her personal belief or opinion as to the truth or falsity of any testimony or guilty of the defendant.
>
> (3) Use arguments calculated to inflame the passions or prejudices of the jury.
>
> (4) Make an argument that would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.
>
> (5) Intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

*Id.* A defendant is only entitled to relief if the improper conduct by the prosecutor "could have affected the verdict to the prejudice of the defendant." *Id.* at 21 (quoting *Harrington v. State*, 389 S.W.2d 758, 759 (1965)). To measure the prejudicial impact of a prosecutor's improper conduct, we consider:

> (1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any errors in the record; and (5) the relative strength or weakness of the case.

*Id.* (citing *State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984)).

During the State's opening statement, the State spoke about the unrelated drug charges pending against Mr. Burrell and Ms. Anderson. The State reminded the jury that nothing had been proven against Mr. Burrell and Ms. Anderson and that they had the

right to remain silent when asked questions about those charges. In that context, the State made the following statements that are relevant to this appeal:

> Because like we talked about in voir dire, it doesn't matter when it comes to the law who you are or what you've done. If you're a saint or if you're a sinner.
>
> What happened to them on April 1st, 2014 should never happen to any member of our community in our community here in Shelby County. Mr. Burrell was selling a truck. I believe a Ford F150. He was at home at his residence . . . . And that's here in Shelby County Tennessee. He was selling a truck. And he knew Mr. Ponder's brother. Mr. Ponder knew that Mr. Burrell was selling a truck. Mr. Ponder and him had talked over the phone for a couple of days. On April 1st, 2014 Mr. Ponder came over to his house with Mr. Richardson. Mr. Ponder and Mr. Richardson are both from Covington. They came into our community and they committed a horrible crime.
>
> And it doesn't matter who those people are that they did that too [sic]. It matter what they did. After they talked with Mr. Burrell about buying that car, Mr. Richardson took a gun out and pointed it at him. Together they stole money. They stole property. And then when Ms. Anderson woke up, they stole property from her. They did that at gunpoint. No one, no one, no matter what they've done or what they've been accused of has the right to –

Mid-sentence, counsel for co-defendant objected to the statements being made by the State. Defendant's counsel never objected or joined the objection. Immediately after the objection was made, the trial court instructed the State to stay with what they expected to prove.

First, Defendant argues that the State engaged in improper conduct during opening statement by saying, "[I]t doesn't matter when it comes to law who you are or what you've done. If you're a saint or if you're a sinner. What happened to them on April 1st, 2014, should never happen to any member of our community in our community here in Shelby County." Defendant makes the same claim about the State saying, "[Co-defendant] and [Defendant] are both from Covington. They came into our community and they committed a horrible crime. And it doesn't matter who those people are that they did that too [sic]." Defendant also extends his argument to the State saying, "No one, no one, no matter what they've done or what they've been accused of has the right to . . . ." Defendant specifically argues that the use of the "personal opinion adjective 'horrible'" is improper and that the use of the phrase "our community" implies that

Defendant was a "lesser class [citizen] with limited rights or freedom of movement and outside their containment area by stating that they were from Covington and [went to Shelby County] to commit a crime."

We view the State's opening statement differently. The use of the adjective "horrible" or the phrase "our community" does not violate a clear and unequivocal rule of law. With regard to the word "horrible," this is merely an adjective used to describe the severity of the crime. While it may be subjective in nature, we cannot see how the use of the word "horrible" only once in an opening statement would rise to the level of an "argument calculated to inflame the passions or prejudice of the jury." Secondly, Defendant's argument that the use of the phrase "our community" implies some sort of lesser class citizenship or limited rights is preposterous. We do not perceive the statement as one meant to "inflame" or "divert" the jury, but rather we see it is a restatement of the facts. The crime was committed in Shelby County. The trial was in Shelby County. The jurors were from Shelby County. However, Defendant was from Covington, Tennessee, which is in a different county and community. Therefore, Defendant is not entitled to plain error relief.

### B. "Victim Impact" Testimony

Defendant alleges that the trial court committed error by admitting irrelevant testimony relating to the victims' relationship, health, and children. The State responds that the testimony which is the subject of Defendant's contention was relevant background information that was admissible. Further, the State contends that, even if the evidence was inadmissible, the trial court's alleged failure to *sua sponte* exclude the evidence does not breach a clear and unequivocal rule of law. We agree with the State.

At the beginning of the State's direct examination of Mr. Burrell, the State asked Mr. Burrell questions about his life. Mr. Burrell testified about the number of children that he had, the ages of his children, and the gender of his children. Additionally, Mr. Burrell testified that Ms. Anderson was his "soon to be" fiancée. Mr. Burrell elaborated that he had known her for about six or seven years and that the two of them lived together at the time of the crime in this case. Just like with Mr. Burrell, the State began the questioning of Ms. Anderson by asking about her age, her children, and her relationship with Mr. Burrell. Ironically, Defendant's counsel began his cross-examination in a similar manner.

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevant evidence is admissible unless it is barred by some other rule of law. Tenn. R. Evid. 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by

the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. "[Q]uestions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this [C]ourt will not interfere in the absence of abuse appearing on the face of the record." *Pylant v. State*, 263 S.W.3d 854, 870 (Tenn. 2008).

In his brief, Defendant specifically claims that the following four pieces of testimony were irrelevant: testimony regarding Mr. Burrell's and Ms. Anderson's children, including their ages and genders; testimony regarding Mr. Burrell's and Ms. Anderson's romantic relationship with each other; testimony regarding Ms. Anderson going to the hospital; and testimony regarding Mr. Burrell's and Ms. Anderson's newborn child having complications after birth. Defendant argues that the aforementioned pieces of testimony did not serve the purposes of giving a context to the witnesses' testimony or of showing why the victims were delayed in notifying the police. Rather, Defendant argues that they were pieces of irrelevant "victim impact" testimony. However, Defendant has failed to show that counsel's failure to object to these pieces of testimony was not a tactical decision, especially given the fact that counsel likewise questioned Ms. Anderson about her relationship with Mr. Burrell and the ages of her children. Defendant is not entitled to plain error relief on this issue.

### *C. 911 Recording*

Defendant argues that the trial court erred when it admitted the 911 recording as Exhibit 1 because the State failed to properly identify the recording and establish a chain of custody. The State replies that the 911 recording was properly authenticated and that Defendant did not respond when asked if there was an objection to the way that it was authenticated. We agree with the State.

It is a condition precedent to admissibility that evidence be authenticated or identified by evidence "sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). Some examples of authentication or identification are testimony of a witness with knowledge that a matter is what it is claimed to be; identification of a voice by a witness's opinion, having heard the voice prior; or evidence that a call was made to the number assigned to a particular person or business if the circumstances show self-identification or, in the case of a business, the conversation related to business reasonably transacted over the telephone. *See* Tenn. R. Evid. 901(b). "[I]t is 'well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence *or* establish an unbroken chain of custody.'" *State v. Cannon*, 254 S.W.3d 287, 296 (Tenn. 2008) (quoting *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000)) (emphasis added). The State is not required to establish facts which exclude every possibility of

tampering; however, "the circumstances established must reasonably assure the identity of the evidence and its integrity." *State v. Holbrooks*, 983 S.W.2d 697, 701 (Tenn. Crim. App. 1998) (citing *State v. Ferguson*, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987)). The issue of authentication is in the sound discretion of the trial court, which we will not disturb absent abuse of discretion. *Id.* (citing *State v. Beech*, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987)).

At a bench conference during trial, the State asked if they could play a portion of the recording of the 911 call, ask Mr. Burrell if it was his voice, and then, play the rest of the call. Co-defendant's counsel stated, "That's not usually how it's done. I have no objection." Defendant's counsel did not object. The State played an unspecified portion of the 911 call. Then, the State asked Mr. Burrell "[I]s that your voice?" and "Is that the start of the recording of the 911 call you made?" Mr. Burrell responded affirmatively to both questions, and the trial court admitted the recording into evidence. Once admitted, the remainder of the recording was played for the jury.

Defendant asserts that Mr. Burrell's testimony was insufficient to authenticate the recording. Defendant specifically points out that the chain of custody for the recording had not been established nor had it been established that the recording had not been tampered with.

Defendant's argument is meritless. The 911 recording was authenticated by Mr. Burrell, a witness with knowledge of both the contents of the recording and the sound of his own voice. When a witness with knowledge of the evidence can identify it, there is no need to establish a chain of custody. *See Cannon*, 254 S.W.3d at 296. Further, every possibility of tampering need not be ruled out. *See Holbrooks*, 983 S.W.2d at 701. Thus, no clear and unequivocal rule of law was breached when the trial court admitted the 911 recording. Defendant is not entitled to plain error relief.

### D. Photographic Lineup

Defendant contends that the trial court erred by admitting an unduly suggestive photographic lineup into evidence. The State maintains that there was "nothing improper" about the lineups. We agree with the State.

"To be admissible as evidence, an identification must not have been conducted in such an impermissibly suggestive manner as to create a substantial likelihood of irreparable misidentification." *State v. Cribbs*, 967 S.W.2d 773, 794 (Tenn. 1998). A two-part test is used to determine the validity of a pre-trial identification. *See Neil v. Biggers*, 409 U.S. 188, 198-99 (1972). First, the trial court must determine whether the identification procedure was unduly suggestive. *Id.* at 198. If the trial court determines that the identification procedure was unduly suggestive, the second step is to determine

whether, under the totality of the circumstances, the identification was nonetheless reliable. *Id.* at 199. Suppression is required only when the totality of the circumstances shows that the identification was unreliable. *State v. Scarborough*, 300 S.W.3d 717, 729 (Tenn. Crim. App. 2000). The following factors must be considered in determining the reliability of an identification:

> 1. the opportunity of the witness to view the criminal at the time of the crime.
>
> 2. the witness's prior description of the criminal.
>
> 3. the accuracy of the witness's prior description of the criminal.
>
> 4. the level of certainty demonstrated by the witness at the confrontation.
>
> 5. the length of time between the crime and the confrontation.

*State v. Hall*, 976 S.W.2d 121, 153 (Tenn. 1998) (quoting *Biggers*, 409 U.S. at 199). It is unnecessary to apply the totality of the circumstances test if the trial court determines that the identification procedure was not unduly suggestive. *See State v. Butler*, 795 S.W.2d 680, 686 (Tenn. Crim. App. 1990).

Defendant claims that the five other men that appear in the photographic lineup do not appear to be near Defendant's age, that he is the only man in the lineup wearing one earring, and that his eyebrows are much thinner than the other men. Defendant also claims the fact that the same officer who compiled the lineup also presented the lineup, along with the fact that Defendant's picture appears first in the lineup, support his claim that the lineup was unduly suggestive. Defendant also takes issue with the identifications by Ms. Anderson and Mr. Burrell being conducted thirty-five minutes apart when there was no testimony regarding the procedures taken to prevent the witnesses from discussing the identification between identifications. Additionally, Defendant argues that Ms. Anderson lacked the capacity to properly identify him because she cannot see well without glasses. He contends that there was no testimony that Ms. Anderson got out of bed and put her glasses on while the robbers were in her home. Further, Defendant asserts that Mr. Burrell initially identified co-defendant to the police.

The photographic lineup that contained Defendant's picture was not unduly suggestive. The photographic lineup includes pictures of five other men, all of whom appear visually similar to Defendant. In our review of the lineup, Defendant appears around the same age as some of the other members of the lineup. We are aware of no rule of law so specific that it would require the other men in the lineup to be wearing the same number of earrings or to have eyebrows plucked in the same manner as the

identified suspect. Lieutenant Hicks's instructions to Mr. Burrell and Ms. Anderson regarding the photographic lineup included a provision which stated that the order in which the photographs were placed held no significance, and there is no requirement that a suspect's picture be placed in a certain location in a photographic lineup. *See State v. Paul Dennis Reid, Jr.*, No. M2003-00539-CCA-R3-DD, 2005 WL 1315689, at *19 (Tenn. Crim. App. June 3, 2005) (affirming a trial court's finding that a lineup was not unduly suggestive when a defendant took issue with his placement in the photographic lineup), *aff'd* 213 S.W.3d 792 (Tenn. 2006).

Additionally, there are no facts in the record which could have led the trial court to believe that Lieutenant Hicks's presentation of the photographic lineup, which he compiled, or the period of time between the identification by Mr. Burrell and the identification by Ms. Anderson would have caused the lineup procedure to be unduly suggestive. Rather, the facts adduced at trial showed that Lieutenant Hicks created a lineup which included individuals that looked similar to Defendant, thoroughly instructed Mr. Burrell and Ms. Anderson on the identification procedure, and conducted the identifications by Mr. Burrell and Ms. Anderson independently. Defendant has failed to show that a clear and unequivocal rule of law was broken when the trial court admitted the photographic lineup identifications. Thus, Defendant is not entitled to plain error relief.

### E. Closing Argument

Defendant claims that the State's repeated references to Mr. Burrell's disability was an emotional appeal to the jury where the State "begged sympathy for Mr. Burrell in an attempt to have the jury set aside the fact that Mr. Burrell, by his own admittance, sold cars and drugs without reporting the income so he can continue to cheat the government by also receiving disability income."

Attorneys are "usually given wide latitude in the scope of their arguments," and trial courts have "wide discretion in their control of those arguments." *State v. Carruthers*, 35 S.W.3d 516, 578 (Tenn. 2000). However, a trial court's discretion over closing arguments is limited by the requirements that arguments be "temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *Id.* (citing *Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995)). As with opening statements, prosecutors must not venture across the boundaries demarcating prosecutorial misconduct. *See Johnson*, 401 S.W.3d at 20 (setting forth instances of prosecutorial misconduct and the factors to consider).

During closing argument, the State reviewed the applicable law and highlighted various jury instructions. Relevant to this appeal, the State mentioned that Mr. Burrell was on disability during a portion of the closing argument when the State was talking

about Defendant and co-defendant selecting a victim. Mr. Burrell's disability was mentioned again when the State discussed Mr. Burrell's risking loss of his disability check by testifying about his other sources of income.

From our review, it appears that Mr. Burrell's disability was mentioned three times during the State's closing argument. Not once was there an objection to its mention. Each time that it was mentioned, it does not appear to have been intended to mislead, inflame, or divert the jury. It was mentioned to explain why Defendant and co-defendant might have chosen Mr. Burrell as a victim, and it was mentioned to explain why Mr. Burrell would have a lessened incentive to lie. No clear and unequivocal rule of law was broken by the State mentioning Mr. Burrell's disability in this manner. Defendant is not entitled to plain error relief.

### III. Cumulative Error

Leaving no stone unturned, Defendant argues that he should receive relief due to the cumulative effect of the errors by the trial court. Since we have found no errors when considering the issues individually, no errors accumulated for cumulative error review. *See State v. Jerald Jefferson*, No. W2014-00784-CCA-R3-CD, 2015 WL 3932448, at *7 (Tenn. Crim. App. June 25, 2015), *perm. app. denied* (Tenn. Jan. 6, 2015).

### Conclusion

For the aforementioned reasons, we affirm the judgments of the trial court.

_____
TIMOTHY L. EASTER, JUDGE